**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:**<br><br>**VAQUERIA ALMEYDA, INC**<br><br>**DEBTOR**<br>──────────────<br>**RAMON LUIS BARRETO GINORIO**<br><br>**DEBTOR** | **LEAD CASE NO.  11-09962 BKT**<br><br>**CHAPTER 12**<br><br><br>**CASE NO.  11-09963 BKT**<br><br>**CHAPTER 12** |

**AMENDED CHAPTER 12 PLAN-** _**Dated November 29, 2012**_

**Debtors are amending their Chapter 12 plan to correct amount and treatment to secure creditor, Scotiabank.**

The above captioned debtor, Vaquería Almeyda, Inc. and Ramón Luis Barreto Ginorio by and through the undersigned counsel, hereby submits the following proposed **amended** plan of reorganization pursuant to the provisions of 11 U.S.C. Section 1201, et seq., and specifically to 11 U.S.C. Section 1222.

Pursuant to the provisions of Sections 1222 of the Code, debtor proposes the classification and treatment of claims as hereinafter stated.

Creditors and other parties in interest are urged to read and consider this **amended** Plan in its entirety since this represents a proposed legally binding agreement between the debtor, creditors and parties in interest.

**ARTICLE I**
**DEFINITIONS**

For the purposes of this Plan of Reorganization, the following terms shall have the respective meanings set forth.

1. **"Administrative Creditor"** shall mean a person entitled to payment of an Administrative Expense Claim.

2. **"Administrative Expense Claim"** shall mean any Claim constituting a cost or expense

of administration of the Chapter 12 proceedings allowed under 11 U.S.C. Sec. 503(b) and 507(a)(1).

3. **"Allowed Claim"** shall mean any Claim as allowed pursuant to 11 U.S.C §502. Unless otherwise provided for in this Plan, "Allowed Claim" shall not include interest, cost, fees, expenses or other charges on the principal amount of such Claim from after the Petition Date.

4. **"Allowed secured Claim"** shall mean any Allowed Claim, which is a Secured Claim and shall include in the amount thereof – unless otherwise stated in this Plan – all interest accrued on or after the Petition Date, fees, costs, and charges as may be allowed.

5. **"Bankruptcy Code"** or **"Code"** shall mean the provision of Title 11 of the United States Code, 11 U.S.C. Sections 1201 et seq., as amended from time to time.

6. **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Puerto Rico, having jurisdiction over this Chapter 12 proceeding.

7. **"Bankruptcy Rules"** or **"Rules"** shall mean the Federal Rules of Bankruptcy Procedures, as amended from time to time.

8. **"Bar Date"** shall mean the deadline of March 14, 2012, after which any proof of claim filed will not have any effect on this Plan and will not entitle its holder to participate with other Claims under this Plan.

9. **"Claim"** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10. **"Class"** shall mean a category of holders of Claims or Interest that is substantially

similar to other claims or interest in such Class.

11. **_"Confirmation Date"_** shall mean the date the Order of Confirmation in this Chapter 12 proceeding and becomes a Final Order.

12. **_"Consummation Date"_** shall mean the date by which all of the conditions precedent to full consummation set forth in this Plan, shall have be met or waived.

13. **_"Creditor"_** shall mean any Person who has a Claim against the Debtor, which arose on or before the Petition Date or a Claim of any kind specified in 11 U.S.C. Sections 502(g), 503(h) or 502(I).

14. **_"Debtor"_** shall mean the individual, Vaquería Almeyda, Inc. and Ramón Luis Barreto Ginorio.

15. **_"Effective Date of the Plan"_** shall mean **_forty-five (45)_** days after the order of confirmation of the plan, becomes a final order and shall be the date on which there shall be made all cash payments required by the Plan.

16. **_"Estate"_** shall mean the property owned by the Debtor that comprises the Chapter 12 estate of the Debtor in the above-captioned Chapter 12 proceeding.

17. **_"Final Order"_** shall mean an Order of the Bankruptcy Court (or other court of appropriate jurisdiction) which shall  not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired, and about which, no appeal or petition for review or rehearing or certiorari proceedings is pending, as a result of which such Order shall have become final according to Rule 8002 of the Rules of Bankruptcy Procedure, as such Rules may be amended from time to time.

18. **_"Lien"_** shall mean a mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on Property as is effective under applicable law as of the Petition Date.

19. **"Liquidation"** shall mean the complete liquidation of the Property of Debtor's Estate, by a duly appointed trustee, according to the provisions of Chapter 7 of the Bankruptcy Code.

20. **"Liquidation Analysis"** shall mean the comparison of the current assets and liabilities of the Debtor, in order to determine the Liquidation Value of the Debtor's Property.

21. **"Liquidation Value"** shall mean the value that, any item of the Debtor's Property could be expected to bring during Liquidation.

22. **"Order of Confirmation"** shall mean the Order of the Bankruptcy Court confirming this Plan, pursuant to 11 U.S.C. § 1225.

23. **"Person"** shall mean any individual, corporation, partnership, association, Joint Stock Company, trust, unincorporated organization, government or any political subdivision thereof, or other entity.

24. **"Petition Date"** shall mean November 17, 2011 the date on which the Debtor's filing of his Voluntary Petition commenced the instant Chapter 12 proceedings.

25. **"Priority Claim"** shall mean any Allowed Claim, other than an Administrative Expense Claim or Priority Tax Claim, to the extent entitled to priority in payment under 11 U.S.C. Section 507(a).

26. **"Priority Creditor"** shall mean any Creditor that is the holder of a Priority Claim.

27. **"Priority Tax Claim"** shall mean any Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507(a)(8).

28. **"Priority Wage Claim"** shall mean Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507(a)(3).

29. **"Property"** shall mean the property of the Estate, which shall be administered by the Debtor or the Chapter 12 Trustee.

30. **"Pro Rata"** shall mean in the same proportion that a Claim or Interest in a given Class

bears to the aggregate amount of all Claims (including disputed Claim until allowed or disallowed) or the aggregate number of all Interest in such Class.

31. **"Secured Claim"** shall mean a Claim, the holder of which is vested with a perfected, non voidable Lien on Property in which the Debtors have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or other applicable non bankruptcy law, and is duly established in this case, to the extent of the value of such holder's interest in the Debtor's interest in such Property, as determined according to 11 U.S.C. Section 506.

32. **"Secured Creditor"** shall mean a Creditor who has a Secured Claim.

33. **"Trustee"** shall mean the standing Chapter 12 Trustee, Jose R. Carrion Morales, Esq.

34. **"Unsecured Claim"** shall mean a Claim, which is other than an Administrative Expense Claim, a Secured Claim or a Priority Claim (including a Priority Tax Claim or a Priority Wage Claim), including any Claim specified in 11 U.S.C. Sections 502(g), 502(h) or 502(I).

35. **"Unsecured Creditor"** shall mean a creditor that is a holder of an Allowed General Unsecured Claim.

36. **"Vesting of Property"** Upon full consummation of the plan, all of the property of the chapter 12 estate shall vest in the debtor.

37. **"Voluntary Petition"** shall mean the voluntary Petition for Relief filed by the Debtor on the Petition Date.

### ARTICLE II
### ASSETS AND LIABILITIES AS OF PETITION DATE

The principal personal asset pertaining to this estate corresponds to the interest over the milk production rights comprised of 59,600 production liters with an approximate fair market value of $1,251,600.00. Debtor estimates the current fair market value of each liter in $21.00.

A reconciliation of assets and projected realization in the event of a liquidation scenario in the

Liquidation Analysis enclosed as **Exhibit D**.

1. **ASSETS:**

    11-09962
    ***VAQUERIA ALMEYDA***

    | Personal Assets | Value |
    |---|---|
    | CASH ON HAND | $100.00 |
    | CHECKING ACCOUNT | $200.00 |
    | VEHICLES | $32,293 |
    | ACCOUNTS RECEIVABLE-INCENTIVE | $25,000 |
    | MILK QUOTA | $1,209,600 |
    | MACHINERY | $57,500.00 |
    | ANIMALS | $435,500.00 |
    | TOTAL | $263,746.00 |

    11-09963
    ***RAMON L BARRETO GINORIO***

    | | |
    |---|---|
    | CASH ON HAND | $20.00 |
    | CHECKING ACCOUNT | $0.00 |
    | HOUSEHOLD GOODS | $20,000 |
    | WEARING APPAREL | $400 |
    | VEHICLES | $27,500.00 |
    | TOTAL | $657,938.00 |

    **PROPERTY**

    | | |
    |---|---|
    | PROPERTY 1-LOT OF LAND | $52,500.00 |
    | PROPERTY 2-LOT OF LAND | $170,000.00 |
    | PROPERTY 3-LOT OF LAND | $200,000.00 |
    | TOTAL | $422,500.00 |

2. **LIABILITIES**:

    Debtor's schedules of liabilities as referenced to the schedules and proof of claims filed in this case indicated that secured claims approximate $1,813,913.77.  Unsecured priority claims under 11 U.S.C. § 507(a) (8) approximate $16,268.80.  General unsecured creditors approximate $10,000.00.

**ARTICLE III**
**DESIGNATION OF CLAIMS**
**TREATMENT FOR CLASSES OF CLAIMS AND INTEREST**

**CLASS 1 – TRUSTEE ADMINISTRATIVE**

The Chapter 12 trustee shall receive and retain as the trustee's percentage fee under this

plan an amount equal to ten percent (10%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount not to exceed $450,000.00, three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount higher than the $450,000.01 but in excess of $1,000,000.00 and reasonable compensation not to exceed three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount that exceeds the before mentioned amount of $1,000,000.00.

**CLASS 2 – ADMINISTRATIVE EXPENSES**

Shall consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code.  This class shall be paid by the trustee in cash and in full as soon as practicable, on the later of (a) the Effective Date or (b) during the first year following the confirmation of the plan.  These payments will be made by the Chapter 12 trustee.

**CLASS 3 – BANCO POPULAR PUERTO RICO – SECURED CLAIMS**

This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this plan.  Considering the value of the properties serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of **$1,391,553.08.**  This amount will be paid as follows:

**Debt Balance Restructuring Upon Confirmation –** On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.  The outstanding secured balance has been estimated in **$1,391,553.08.** Debtor, also, proposes with the confirmation of the plan to consolidate all of

these loans into one loan.

This consolidated loan from **January 2013 to December 2017** will receive monthly payments of principal and interest of **$7,500.00.** These payments will be made directly to Creditor through Vaquería Tres Monjitas, Inc. Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit A,** Payment Plan as **Exhibit A-1,** Special Provisions as **Exhibit A-2** and the loan calculator table enclosed herein as **Exhibit B.** See **Exhibit E** Current Prime Interest Rate.

After these sixty (60) months have elapsed, the outstanding balance will be around of **$1,148,818.77.** Upon completion of this term, meaning **January 2017**, Debtors will make monthly payments of **$8,500.00** at an interest rate of 3.75%. These payments will be made from **January 2017 up until December 2019.**

After these twenty-four (24) months have elapsed, the outstanding balance will be around of **$1,026,646.69.** Upon completion of this term, meaning **January 2020**, Debtors will make a Balloon payment for the remaining amount of the obligation payable as of **January 15, 2020.** Depending on the floating interest rate and any recapture, the Balloon payment will be approximately of **$1,026,646.69.**

Chapter 12 Plan's treatment of BPPR shall include the following terms and conditions:

a.      In case of any failure to comply, Debtors will provide for the payment of the unpaid balance of the principal amount plus a floating interest rate of 3.00% over Prime Rate, as constituting a default interest rate. The Bank retains all rights to seek additional remedies in case of default.

b.      During the term of the restructuring, BPPR shall receive payments directly from Vaquería Tres Monjitas, Inc., in accordance with an assignment of the proceeds of milk production in the amounts set forth.

c.      In addition, the Debtors will hold a yearly meeting with BPPR during the month

of January to discuss Debtors' operations and compliance with the terms agreed to.

e.      Banco Popular may take any action necessary during the term of the Plan in order to maintain as valid its existing, perfected security interests over real and personal property of the Debtors, and the loan documents, through and including **January 2020.** The consolidation of the loan relationships set forth herein as part of the Plan are not, and are not intended to be, a novation of loan no. 2294737-9011 and loan no. 2294737-0999/0001. The Plan as composed extends these loans through **January 2020.** . Therefore, the Debtors will provide their consent and cooperation as to any request by Banco Popular to maintain as valid its loan documents and its existing perfected security interests over Debtors' real and personal property. Except as set forth herein, Banco Popular will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan. In case of any default under the Chapter 12 plan leading to the dismissal of the case, the restructuring of the loan obligations as expressed herein shall be of no force and effect. In that event, the original terms of the loan obligations shall prevail. Upon any failure of Debtors to abide by the terms herein stipulated during two consecutive months occurring after **December 2017,** shall cause the terms herein expressed to be of no force and effect.

f.      Upon request by Banco Popular, Debtors will provide the Bank true and exact copies of any statements or liquidation of its milk production including but not limited to any statement furnished by the processing plan until full payment of the secured amount as detailed in the plan.

g.      Upon request by Banco Popular, Debtor shall also provide BPPR with any financial statements or operating reports so requested by BPPR, including weekly, monthly or annual financial statements or reports.

h.      Debtors will retain the services of the Puerto Rico Dairy Herd Improvement

Association, Inc. (PRDHIA), and shall supply Banco Popular with a copy of the monthly reports generated by the PRDHIA. Debtors shall remain enrolled with PRDHIA through **December 2017.**

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance.

Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by Vaquería Tres Monjitas, Inc.

Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 10 of the plan.

**CLASS 4 –SCOTIABANK DE PUERTO RICO –POC #2 SECURED**

This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this plan.  Considering the value of the property serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of **$149,819.13**.  This amount will be paid as follows:

**Debt Balance Restructuring Upon Confirmation –** On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.  The outstanding secured balance has been estimated in **$149,819.13**.  This loan from **January 2013 to December 2017** will receive monthly payments of principal and interest.  The payments to be receiving by this creditor monthly will be **$649.62**

to be applied to interest and principal at an interest rate of 3.25% and amortizing over a period of thirty (30) years. This payment will be made through the Chapter 12 Trustee.  Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit A,** Payment Plan as **Exhibit A-1,** Special Provisions as **Exhibit A-2** and the loan calculator table enclosed herein as **Exhibit C.**  See **Exhibit E** Current Prime Interest Rate.

After these sixty (60) months have elapsed, the outstanding balance will be around of **$133,954.86** will be covered over the next **fifteen (15)** years with a fixed interest of 3.75%. The amortization will be over the mentioned **fifteen (15)** years, payable in monthly installments of no more than **$974.15** to be applied to principal and interest.  This amount will be paid for the **next one hundred eighty (180) months** from **January 2017 up to its maturity on or before December 2032.**

**In addition, during the term of the mortgage loan, the Debtor will pay the insurance and the taxes of the property owed to CRIM.  If the Debtors default on two or more payments of the mortgage modification, the modification will be withdrawn and the loan will revert to its original terms as if.**

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance.

Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by Vaquería Tres Monjitas, Inc.

The payments proposed derive from the milk production proceeds remitted to this creditor from the Chapter 12 Trustee.  Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 10 of the plan.

## CLASS 5 –PUERTO RICO FARM CREDIT AGENCY –CLAIM NOT FILED

Considering the value of the property serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition is in the amount of **$11,384.78.** This creditor will continue receiving payments in the amount of $500.00 through Vaquería Tres Monjitas, Inc. up to its maturity date.

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance.

Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by Vaquería Tres Monjitas, Inc. Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 10 of the plan.

## CLASS 6 - BANCO BILBAO VIZCAYA ARGENTARIA"BBVA" – POC #6&8

This creditor's legal and equitable interest on the secured amount will be modified upon the confirmation of this plan. Considering the value of the Milk Quota serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of $83,500.00 as per stipulated in the joint motion. This amount will be paid from the sale of 8,000 litters of the Milk Quota.

Debtors with the proceeds of the sale of 2,000 liters paid the sum of $36,000.00 to BBVA which were to be discounted from the amount of $83,500.00. Docket NO. 165.

The amount owe to BBVA is $47,500.00 which will be paid off with the sale of the remaining 6,000 liters of milk quota.

### CLASS 7 – PAN AMERICAN GRAIN POC #1

This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this plan. Considering the value of the property serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of **$118,804.72**. This amount will be paid as follows:

**Debt Balance Restructuring Upon Confirmation –** On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full. The outstanding secured balance has been estimated in **$118,804.72**. This loan from **January 2013 to December 2017** will receive monthly payments of principal and interest. The payments to be receiving by this creditor monthly will be **$500.00** to be applied to interest and principal at an interest rate of 3.25% and amortizing over a period of thirty (30) years. This payment will be made through the Chapter 12 Trustee. Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit A,** Payment Plan as **Exhibit A-1,** Special Provisions as **Exhibit A-2** and the loan calculator table enclosed herein as **Exhibit C.** See **Exhibit E** Current Prime Interest Rate.

After these sixty (60) months have elapsed, the outstanding balance will be around of **$105,216.62** will be covered over the next **fifteen (15)** years with a fixed interest of 3.75%. The amortization will be over the mentioned **fifteen (15)** years, payable in monthly installments of no more than **$729.82** to be applied to principal and interest. This amount will be paid for the **next one hundred eighty (180) months** from **January 2017 up to its maturity on or before December 2032.**

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance.

Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by Vaquería Tres Monjitas, Inc.

The payments proposed derive from the milk production proceeds remitted to this creditor from the Chapter 12 Trustee. Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 10 of the plan.

### CLASS 8 – PAYMENT OF SECURED CLAIMS

Creditor, Internal Revenue Services, filed proof of claim #3 in the amount of $11,498.42 and proof of claim #1 for $19,007.51 as secured. This class total amount is **$30,505.93.** This class will be pay by Debtors through the Chapter 12 Trustee.

### CLASS 9 - PAYMENT OF UNSECURED PRIORITY CLAIMS

As per proof of claims filed by creditors,

- Internal Revenue Service filed proof of claim #3($13,951.09) and #1($2,954.51) for the total amount of $16,905.60.

- State Insurance Fund filed proof of claim #7 for the amount of $6,547.47.

- Department of Treasury filed proof of claim #9 for the amount of $4,002.14.

   The present value of these debts is **$27,455.21** and will be pay through the Chapter 12 Trustee.

### CLASS 10 - GENERAL UNSECURED CREDITORS

General unsecured creditors considering those listed by Debtors, those who filed a proof

of claim and those secured creditors, who after Debtor's estimates reached by Debtors have agreed to be considered part of their claim as unsecured, are included in this class.  This class will be pay through the Chapter 12 Trustee.

**The debt under this class has been estimated by Debtors in the amount of no more than $11,158.50 including present value.  This class will receive 100% plus interest of 3.25%.**

### ARTICLE IV
### PAYMENT OF UNSECURED PRIORITY CLAIMS
### UNDER 11 U.S.C. SECTION 507(a) (8)

All allowed unsecured priority claims pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, will be paid as stated below.  Debtor estimates the debt as follows:

- Internal Revenue Service:  $16,268.80 (Priority Portion).

- State Insurance Fund filed proof of claim #7 for the amount of $6,547.47(Priority Portion).

- Department of Treasury filed proof of claim #9 for the amount of $4,002.14(Priority Portion).

All allowed unsecured priority claims, pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, shall be paid by the Chapter 12 Trustee through monthly installments commencing on the effective date and after the date of confirmation of the plan.  The funds will be obtained from the Debtor's dairy farm operation on the basis of consecutive installments remitted biweekly and directly from Vaquería Tres Monjitas, Inc.  Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit A,** Payment Plan as **Exhibit A-1** and Special Provisions as **Exhibit A-2**.

### ARTICLE V
### PENDING LITIGATION

Debtor states that, as of this date, to the best knowledge and belief there is no pending or threatened litigation that may affect the liability or asset composition of their personal business.

**ARTICLE VI**
**MEANS OF EXECUTION OF THE PLAN AND FEASIBILITY**

Debtor shall have sufficient funds to make all payments then due under this Plan.  The funds will be obtained from Debtor's dairy farm operation.  A set of business projections, will be filed as **Exhibit G.**

On the Consummation Date of the plan, the operation of the named business, all estate assets and allowed claims and valid liens, as set forth in the plan, shall be and become the general responsibility of the reorganized debtors, which shall thereafter have the responsibility for the management, control and administration thereof.

Management of debtors' affairs, collection of moneys and distribution to creditors, will be under the control and supervision of the reorganized debtor, which will assume the same role the debtor in possession have assume through this reorganization process.

**ARTICLE VII**
**DISCHARGE OF CLAIMS**

Except as otherwise provided for in this Chapter 12 Plan or in the Order of Confirmation, the rights granted by this Plan and the payment and distributions to be made hereunder, shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and claims of any kind, nature or description whatsoever against the Debtor.

Upon completing all conditions precedent to the consummation of this plan, all existing claims shall be deemed to be exchanged, satisfied, discharged and release in full; and all holders of claims shall be precluded from asserting any other or future claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date, whether or not such holder filed a proof of claim.  Upon full payment of the amounts compromised and detailed herein, secured creditors will turnover to the debtor for cancellation purposes of promissory notes encumbering personal and real property pertaining to this estate.

The order of confirmation of the Plan shall constitute an injunction against the pursuit of any claim or Equity Interest, whether or not a proof of claim or proof of interest based on any such debt,

liability, or interest is filed or deemed filed, under 11 U.S.C. 501, such claim is allowed under 11 U.S.C.

502 or the holder of such claim has accepted this Plan in the manner set forth herein.

## ARTICLE VIII
## OBJECTIONS TO CLAIMS

The debtor, the trustee, both at their option, or upon order of the Bankruptcy Court, if requested,

may file an objection to any claim as to its validity or amount before the closing of the case.  If an

objection is made, payment to such claimants will be made only after the entry of a final order by the

Court allowing such claim and in accordance with the provisions of the Plan governing such class to

which such claims belongs.

The claim of any general unsecured creditor who fails to file a proof of claim or that files its claim

after the fixed claims bar date be disallowed by confirmation hearing.

## ARTICLE IX
## EXECUTORY CONTRACTS

Except as stated herein, debtor assumes all unexpired leases and executory contracts to which it

is a party and which have not been expressly rejected pursuant to 11 U.S.C. Section 365(a).  Specifically,

debtor has assumed throughout the bankruptcy proceedings the following contracts:

      a.  Vaquería Tres Monjitas, Inc.: Milk Production Contract.

      b.  Juan Amador Gutiérrez: Lease of Lot of Land

      c.  Autoridad de Tierras: Lease of Lot of Land

## ARTICLE X
## PROVISIONS FOR THE MODIFICATION OF THE PLAN

The debtor may propose amendments or modifications of this Plan at any time prior to its

confirmation pursuant to 11 U.S.C. 1223.  After confirmation of the Plan, the Reorganized Debtor may,

with the approval of the Court and as long as it does not adversely affect the interest of the creditors,

remedy any defect or omission, in such manner as may be necessary to carry out the purposes and

effects of the same.

**ARTICLE XI**
**CLOSING OF THE CASE**

At such time as the case has been fully consummated, this case shall be closed.  In order for the case to be close, the trustee shall file a final report and account showing that the case has been fully administered and the Plan has been fully consummated.  The Court may conduct a hearing upon application thereof and after notice to all creditors and parties in interest.  Thereafter an order approving the trustee's report and closing of the case shall be entered.

**ARTICLE XII**
**COMPLIANCE WITH LAWS AND GOOD FAITH**

Debtor believes that the plan complies with all provisions of chapter 12 and any other applicable provision of the Bankruptcy Code, that the plan has been proposed in good faith and not by any means forbidden by law, and that all fees, charges or amounts required to be paid before confirmation have been paid.

**ARTICLE XIII**
**CHAPTER 7 COMPARISON**

Based upon the values of the debtor's assets and the amount of secured and unsecured claims as set forth in the debtor's chapter 12 statement, the debtor believes that the value, as of the effective date of the plan, of property to be distributed under the plan on account of each estate of the debtor were liquidated under chapter 7 of the Bankruptcy Code.  Refer to Liquidation Analysis enclosed as **Exhibit D.**

**ARTICLE XIV**
**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by law, rule or statute, or by this Plan, to enable the debtor to consummate any and all proceedings which they may bring before or after the entry of the order of confirmation, in order to carry out the provisions of this Plan, specifically meaning until payment of all creditors as listed in the Treatment of Classes, Article IV, supra.

**RESPECTFULLY SUMITTED,**

In Caguas, Puerto Rico, this 29th day of November of 2012.

**GRATACOS LAW OFFICE**
PO BOX 7571
CAGUAS, PR 00726
PHONE: (787) 746-4772 & FAX: (787) 746-3633
EMAIL: bankruptcy@gratacoslaw.com

/s/ Víctor Gratacós-Díaz (127906)

EXHIBIT A

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO**

**IN RE:**

**VAQUERIA ALMEYDA, INC**

**DEBTOR**

**RAMON LUIS BARRETO GINORIO**

**DEBTOR**

**LEAD CASE NO.  11-09962 BKT**

**CHAPTER 12**

**CASE NO.  11-09963 BKT**

**CHAPTER 12**

**AMENDED PAYMENT PROPOSAL TO:**

**CLASS 3 – BANCO POPULAR PUERTO RICO – SECURED CLAIMS**

This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this plan.  Considering the value of the properties serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of **$1,391,553.08.**  This amount will be paid as follows:

**Debt Balance Restructuring Upon Confirmation –** On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.  The outstanding secured balance has been estimated in **$1,391,553.08.** Debtor, also, proposes with the confirmation of the plan to consolidate all of these loans into one loan.

This consolidated loan from **January 2013 to December 2017** will receive monthly payments of principal and interest of **$7,500.00.**  These payments will be made directly to Creditor through Vaquería Tres Monjitas, Inc.  Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit A,** Payment Plan as **Exhibit A-1,** Special Provisions as **Exhibit A-2** and the loan calculator table enclosed herein as **Exhibit B.**  See **Exhibit E** Current Prime Interest Rate.

After these sixty (60) months have elapsed, the outstanding balance will be around of **$1,148,818.77.** Upon completion of this term, meaning **January 2017**, Debtors will make monthly payments of **$8,500.00** at an interest rate of 3.75%.  These payments will be made from **January 2017 up until December 2019.**

After these twenty-four (24) months have elapsed, the outstanding balance will be around of **$1,026,646.69.** Upon completion of this term, meaning **January 2020**, Debtors will make a Balloon payment for the remaining amount of the obligation payable as of **January 15, 2020.** Depending on the floating interest rate and any recapture, the Balloon payment will be approximately of **$1,026,646.69.**

Chapter 12 Plan's treatment of BPPR shall include the following terms and conditions:

a. In case of any failure to comply, Debtors will provide for the payment of the unpaid balance of the principal amount plus a floating interest rate of 3.00% over Prime Rate, as constituting a default interest rate.  The Bank retains all rights to seek additional remedies in

case of default.

      b.      During the term of the restructuring, BPPR shall receive payments directly from Vaquería Tres Monjitas, Inc., in accordance with an assignment of the proceeds of milk production in the amounts set forth.

      c.      In addition, the Debtors will hold a yearly meeting with BPPR during the month of January to discuss Debtors' operations and compliance with the terms agreed to.

      e.      Banco Popular may take any action necessary during the term of the Plan in order to maintain as valid its existing, perfected security interests over real and personal property of the Debtors, and the loan documents, through and including **January 2020.** The consolidation of the loan relationships set forth herein as part of the Plan are not, and are not intended to be, a novation of loan no. 2294737-9011 and loan no. 2294737-0999/0001.  The Plan as composed extends these loans through **January 2020.** .  Therefore, the Debtors will provide their consent and cooperation as to any request by Banco Popular to maintain as valid its loan documents and its existing perfected security interests over Debtors' real and personal property.  Except as set forth herein, Banco Popular will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan.  In case of any default under the Chapter 12 plan leading to the dismissal of the case, the restructuring of the loan obligations as expressed herein shall be of no force and effect.  In that event, the original terms of the loan obligations shall prevail.  Upon any failure of Debtors to abide by the terms herein stipulated during two consecutive months occurring after **December 2017,** shall cause the terms herein expressed to be of no force and effect.

      f.      Upon request by Banco Popular, Debtors will provide the Bank true and exact copies of any statements or liquidation of its milk production including but not limited to any statement furnished by the processing plan until full payment of the secured amount as detailed in the plan.

      g.      Upon request by Banco Popular, Debtor shall also provide BPPR with any financial statements or operating reports so requested by BPPR, including weekly, monthly or annual financial statements or reports.

      h.      Debtors will retain the services of the Puerto Rico Dairy Herd Improvement Association, Inc. (PRDHIA), and shall supply Banco Popular with a copy of the monthly reports generated by the PRDHIA. Debtors shall remain enrolled with PRDHIA through **December 2017.**

      If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance.

      Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by Vaquería Tres Monjitas, Inc.

      Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 10 of the plan.

### CLASS 4 –SCOTIABANK DE PUERTO RICO –POC #2 SECURED

      This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this plan.  Considering the value of the property serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of **$149,819.13**.  This amount will be paid as follows:

**Debt Balance Restructuring Upon Confirmation –** On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and

of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full.  The outstanding secured balance has been estimated in **$149,819.13**.  This loan from **January 2013 to December 2017** will receive monthly payments of principal and interest.  The payments to be receiving by this creditor monthly will be **$649.62** to be applied to interest and principal at an interest rate of 3.25% and amortizing over a period of thirty (30) years. This payment will be made through the Chapter 12 Trustee.  Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit A,** Payment Plan as **Exhibit A-1,** Special Provisions as **Exhibit A-2** and the loan calculator table enclosed herein as **Exhibit C.**  See **Exhibit E** Current Prime Interest Rate.

After these sixty (60) months have elapsed, the outstanding balance will be around of **$133,954.86** will be covered over the next **fifteen (15)** years with a fixed interest of 3.75%. The amortization will be over the mentioned **fifteen (15)** years, payable in monthly installments of no more than **$974.15** to be applied to principal and interest.  This amount will be paid for the **next one hundred eighty (180) months** from **January 2017 up to its maturity on or before December 2032.**

**In addition, during the term of the mortgage loan, the Debtor will pay the insurance and the taxes of the property owed to CRIM.  If the Debtors default on two or more payments of the mortgage modification, the modification will be withdrawn and the loan will revert to its original terms as if.**

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance.

Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by Vaquería Tres Monjitas, Inc.

The payments proposed derive from the milk production proceeds remitted to this creditor from the Chapter 12 Trustee.  Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 10 of the plan.

## CLASS 5 –PUERTO RICO FARM CREDIT AGENCY –CLAIM NOT FILED

Considering the value of the property serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition is in the amount of **$11,384.78.**  This creditor will continue receiving payments in the amount of $500.00 through Vaquería Tres Monjitas, Inc. up to its maturity date.

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance.

Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by Vaquería Tres Monjitas, Inc. Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 10 of the plan.

## CLASS 6 - BANCO BILBAO VIZCAYA ARGENTARIA "BBVA" – POC #6&8

This creditor's legal and equitable interest on the secured amount will be modified upon the confirmation of this plan.  Considering the value of the Milk Quota serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of $83,500.00 as per stipulated in the joint motion.  This amount will be

paid from the sale of 8,000 litters of the Milk Quota.

    Debtors with the proceeds of the sale of 2,000 liters paid the sum of $36,000.00 to BBVA which were to be discounted from the amount of $83,500.00. Docket NO. 165.

    The amount owe to BBVA is $47,500.00 which will be paid off with the sale of the remaining 6,000 liters of milk quota.

### CLASS 7 – PAN AMERICAN GRAIN POC #1

    This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this plan. Considering the value of the property serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of **118,804.72**. This amount will be paid as follows:

**Debt Balance Restructuring Upon Confirmation –** On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full. The outstanding secured balance has been estimated in **118,804.72**. This loan from **January 2013 to December 2017** will receive monthly payments of principal and interest. The payments to be receiving by this creditor monthly will be **$500.00** to be applied to interest and principal at an interest rate of 3.25% and amortizing over a period of thirty (30) years. This payment will be made through the Chapter 12 Trustee. Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit A,** Payment Plan as **Exhibit A-1,** Special Provisions as **Exhibit A-2** and the loan calculator table enclosed herein as **Exhibit C.** See **Exhibit E** Current Prime Interest Rate.

    After these sixty (60) months have elapsed, the outstanding balance will be around of **105,216.62** will be covered over the next **fifteen (15)** years with a fixed interest of 3.75%. The amortization will be over the mentioned **fifteen (15)** years, payable in monthly installments of no more than **$729.82** to be applied to principal and interest. This amount will be paid for the **next one hundred eighty (180) months** from **January 2017 up to its maturity on or before December 2032.**

    If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance.

    Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by Vaquería Tres Monjitas, Inc.

    The payments proposed derive from the milk production proceeds remitted to this creditor from the Chapter 12 Trustee. Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 10 of the plan.

### CLASS 8 – PAYMENT OF SECURED CLAIMS

Creditor, Internal Revenue Services, filed proof of claim #3 in the amount of $11,498.42 and proof of claim #1 for $19,007.51 as secured. This class total amount is **$30,505.93.** This class will be pay by Debtors through the Chapter 12 Trustee.

### CLASS 9 - PAYMENT OF UNSECURED PRIORITY CLAIMS

As per proof of claims filed by creditors,

- Internal Revenue Service filed proof of claim #3($13,951.09) and #1($2,954.51) for the total amount of $16,905.60.
- State Insurance Fund filed proof of claim #7 for the amount of $6,547.47.

- Department of Treasury filed proof of claim #9 for the amount of $4,002.14.
  The present value of these debts is **$27,455.21** and will be pay through the Chapter 12 Trustee.

## CLASS 10 - GENERAL UNSECURED CREDITORS

General unsecured creditors considering those listed by Debtors, those who filed a proof of claim and those secured creditors, who after Debtor's estimates reached by Debtors have agreed to be considered part of their claim as unsecured, are included in this class.  This class will be pay through the Chapter 12 Trustee.

**The debt under this class has been estimated by Debtors in the amount of no more than $11,158.50 including present value.  This class will receive 100% plus interest of 3.25%.**